Brothers-Mohamed v Harrington (2024 NY Slip Op 51660(U))

[*1]

Brothers-Mohamed v Harrington

2024 NY Slip Op 51660(U)

Decided on December 9, 2024

Supreme Court, New York County

King, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 9, 2024
Supreme Court, New York County

Serena Brothers-Mohamed, as the Administratrix Of the Estate of MARIE BROTHERS, Deceased, Plaintiff,

against
Martin E. Harrington, M.D., ELIZABETH B. HARRINGTON, M.D., ROBERT LOOKSTEIN, M.D., and MOUNT SINAI HOSPITAL, Defendants.

Index No. 805357/2018

KRENTSEL GUZMAN HERBERT LLP, Attorneys for the Plaintiff, 40 Wall Street 45th Floor, New York, NY 10005
WILSON ELSER, Attorneys for Defendants Martin E. Harrington M.D. and Elizabeth B. Harrington M.D., 150 East 42nd Street, New York, NY 10017
SHAUB, AHMUTY, CITRIN & SPRATT, LLP, Attorneys for the Defendants Robert Lookstein M.D. and Mount Sinai Hospital, 1983 Marcus Ave, New Hyde Park, NY 11042

Kathy J. King, J.

The following e-filed documents, listed by NYSCEF document number (Motion 006) 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 173, 175, 176, 177, 178, 181, 182, 183, 185 were read on this motion to/for JUDGMENT - SUMMARY.
Upon the foregoing papers, Defendants Martin E. Harrington, M.D. ("M. Harrington M.D") Elizabeth Harrington, M.D. ("E.Harrington M.D.") (collectively referred to as [*2]"Defendants") move for an order granting summary judgment, pursuant to CPLR 3212, on the following grounds:
(1) that the Defendants did not depart from accepted standards of medical care and that there was no proximate cause between the allegedly negligent care and the Plaintiff's alleged injuries;
(2) that Plaintiff does not maintain a valid cause of action for lack of informed consent;
or in the alternative;
(3) Defendants move for an order granting partial summary judgment pursuant to CPLR 3212(e) and (g).
The Plaintiff opposes the motion.
BACKGROUND
On November 5, 2013, Marie Brothers ("the decedent"), then 62 years old, presented to Dr. Nilesh Balar at East Tremont Vascular Associates ("ETV Associates"), where she underwent an ultrasound that revealed the presence of a 5.1 cm abdominal aortic aneurysm ("AAA"). On December 20, 2013, Drs. Balar and Parind Oza performed an endovascular aneurysm repair ("EVAR") surgery with placement of a Trivascular Ovation stent graft at Montefiore Medical Center. 
On July 16, 2015, more than a year and a half later, the decedent was seen by Dr. Mayank Patel ("Dr. Patel") at ETV Associates. An arterial duplex study performed during the visit revealed that the aneurysm had grown to 7 cm. Dr. Patel counseled Ms. Brothers the enlarging aneurysm, required urgent attention, and discussed with her the risks, benefits, complications, and alternatives and advised Ms. Brothers to go to the emergency room and get a CT. The decedent declined intervention however, on July 24, 2015, the decedent underwent a balloon angioplasty of the proximal stent graft at Montefiore Hospital. 
The decedent returned to see Dr. Patel on March 3, 2016, at which time Dr. Patel advised that she had developed a Type I endoleak, reiterated the need for immediate intervention, and again advised of the risks, benefits and alternatives of EVAR. The record indicates that endoleaks occur when an endovascular stent graft fails to completely divert blood flow from the aneurysm sac.
Thereafter, on March 11, 2016, the decedent sought a second opinion from vascular surgeon E. Harrington M.D., who advised the decedent of the need for surgical repair of the aneurysm. On March 14, 2016, the decedent was admitted to Mount Sinai Hospital for preoperative testing and diagnostic imaging, including an aortogram and diagnostic endoleak study performed by Dr. Robert Lookstein ("Dr. Lookstein"). The testing revealed a Type IA endoleak just below the level of the left renal artery, as well as a Type II endoleak. Dr. Lookstein noted that there were no good endovascular repair options for the decedent. E. Harrington M.D. also documented this note and recommended an open repair surgical option. 
On March 18, 2016, E. Harrington M.D. notes that she spoke with the decedent's daughter, Plaintiff Serena Brothers-Mohamed, and reviewed the risks of the open repair surgery, including bleeding, infection, and mortality. E. Harrington M.D. also documented that both the Plaintiff and the decedent understood that the open repair surgery was a high-risk procedure. 
On March 21, 2016, the decedent was admitted to Mount Sinai Hospital for open repair of the abdominal aortic aneurysm endoleak by the Defendants. Prior to the surgery, the decedent signed an informed consent form. 
During the surgery, the decedent suffered a splenic laceration and Dr. Brian Katz ("Dr. [*3]Katz") was called for an intraoperative consultation to reassess the spleen for preservation. However, before Dr. Katz arrived, the decedent became hypotensive, and M. Harrington, M.D., a vascular surgeon, performed an emergent splenectomy. During the course of the procedure, he noted pancreatic injury, as evidenced by a small amount of bleeding from the tail of the pancreas. The injury was repaired by Dr. Katz. Intraoperatively, an ultrasound was performed to look for evidence of endoleak in the upper aneurysm, and none were detected. 
After the surgery, the decedent was transferred to the Surgical Intensive Care Unit ("SICU") where she was continuously monitored. She was transferred to a step-down unit on March 23, 2016, and transferred back to SICU on April 5, 2016, after an angiogram showed the development of acute intestinal pancreatitis and elevated white blood count. 
On April 15, 2016, the decedent clinically worsened, and was intubated. Additionally, the decedent underwent multiple exploratory and medical procedures to address her medical condition. 
On April 27, 2016, and due to respiratory failure, a tracheostomy was performed on the decedent. Over the next several weeks, however, the decedent's condition continued to worsen, and supportive care was provided. Risks and potential for mortality were reviewed with the decedent's family. She began receiving palliative care on June 3, 2016, and expired on June 10, 2016.
Thereafter, Plaintiff initiated this lawsuit against the Defendants E. Harrington, M.D. and M. Harrington, M.D., Robert Lookstein M.D. ("Dr. Lookstein"), and Mount Sinai Hospital, asserting claims for negligence, medical malpractice, and lack of informed consent.[FN1]
Specifically, in regards to the negligence and medical malpractice causes of action, Plaintiff alleges that the Defendants, departed from good and accepted medical practice by: (1) improperly performing the repair of the decedent's Type IA endoleak on March 1, 2016; (2) causing a perforation of the decedent's spleen and injury to the pancreas during the procedure, and allowing an infection to develop; (3) allowing the decedent's spleen and pancreas to stick together and fluids to accumulate in her intestines; and (4) allowing the decedent's condition to worsen by failing to timely refer the decedent to an Infectious Disease specialist, failing to refer the decedent for emergency surgery, and failing to timely administer antibiotics. Plaintiff alleges that these departures proximately caused the decedent to sustain a perforated spleen and pancreas, spleen and pancreas leakage, infection, fever, nausea, vomiting, hemorrhage requiring blood transfusions, difficulty breathing, a pancreatic abscess, and death.
Defendants now seek summary judgment dismissing the complaint, pursuant to CPLR 3212, arguing that they did not depart from the applicable standard of care in performing the surgery at issue, and that their actions did not proximately cause the decedent's injuries or death.
DISCUSSION
A defendant physician moving for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law by establishing the absence of a triable issue of fact as to his or her alleged departure from accepted standards of medical practice (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Frye v Montefiore Med. Ctr., 70 AD3d at 24), or by [*4]establishing that the plaintiff was not injured by such treatment (see McGuigan v Centereach Mgt. Group, Inc., 94 AD3d 955 [2d Dept 2012]; Sharp v Weber, 77 AD3d 812 [2d Dept 2010]; see generally Stukas v Streiter, 83 AD3d 18 [2d Dept 2011]).
To satisfy this burden, a Defendant must present expert opinion testimony that is supported by the facts in the record, addresses the essential allegations in the complaint or the bill of particulars, and is detailed, specific, and factual in nature (see Roques v Noble, 73 AD3d at 206; Joyner-Pack v. Sykes, 54 AD3d 727 [2d Dept 2008]; Koi Hou Chan v Yeung, 66 AD3d 642 [2d Dept 2009]; Jones v Ricciardelli, 40 AD3d 935 [2d Dept 2007]). Furthermore, to satisfy his or her burden on a motion for summary judgment, a defendant must address and rebut specific allegations of malpractice set forth in the plaintiffs' bill of particulars (see Wall v Flushing Hosp. Med. Ctr., 78 AD3d 1043 [2d Dept 2010]; Grant v Hudson Val. Hosp. Ctr., 55 AD3d 874 [2d Dept 2008]; Terranova v Finklea, 45 AD3d 572 [2d Dept 2007]).
Once the defendant establishes prima facie entitlement to judgment as a matter of law, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact by submitting an expert's affidavit or affirmation attesting to a departure from accepted medical practice and opining that the defendant's acts or omissions were a competent producing cause of the plaintiff's injuries (see Roques v Noble, 73 AD3d at 207; Landry v Jakubowitz, 68 AD3d 728 [2d Dept 2009]; Luu v Paskowski, 57 AD3d 856 [2d Dept 2008]).
Here, Defendants submit the affirmation of Vicken Pamoukian, M.D. ("Dr. Pamoukian"), a board-certified physician in General and Vascular surgery, who opines to a reasonable degree of medical certainty based on a review of the relevant pleadings, medical records, and deposition transcripts. 
In support of the motion, Dr. Pamoukian opines that Defendants performed a leaking endovascular aortic repair (a leaking EVAR) of an abdominal aortic aneurysm (AAA) on March 21, 2016, in conformance with the standard of care of vascular surgery and medical practice. He further stated that it is generally accepted in the vascular surgery community that Type IA endoleaks require repair in all instances. He opines that Defendants did not depart from accepted standards of vascular surgical care, since splenic injury is a known complication of post-EVAR endoleak repair surgery and, thus, do not evidence departure from accepted standards of medical practice. According to Dr. Pamoukian, the splenic tear likely occurred during mobilization of the lower left lobe of the liver and stomach due to maximize exposure in negotiating the spleen and is not evidence of a departure from accepted standards of medical practice. He opines that the design and location of the Trivascular stent graft high in the aorta made it extremely difficult to remove without causing hemorrhage, and that M. Harrington M.D.'s surgical approach was appropriate given the design of the decedent's stent graft. Dr. Pamoukian further opines that the decision to abort removal of the stent graft, and instead perform the splenectomy and pancreatic repair was in conformance with good medical judgment consistent with accepted standards of vascular/general surgery and medical practice.
As to the pancreatic injury suffered by the decedent during the surgery, Dr. Pamoukian states that it is "a known and unavoidable complication of splenectomy" given the anatomical configuration between the two organs and is not evidence of a departure. Dr. Pamoukian further opines that the Defendants timely appreciated and diagnosed the intraoperative splenic injury, and took appropriate action to stem the bleeding including, but not limited to, placing pressure, and packing the area with surgical, and calling Dr. Katz, a general surgeon, for assistance. He opines that while waiting for Dr. Katz to arrive to repair the pancreatic injury, the Defendants [*5]timely and appropriately performed a lifesaving emergent splenectomy in the presence of uncontrollable bleeding and an increasingly hypotensive patient.
Regarding the decedent's postoperative management care, Dr. Pamoukian opined that nothing the Defendants did or did not do caused the decedent's death, and that the postoperative care was appropriately managed by the surgical, medical, and SICU physicians who routinely manage such issues. 
Based on Dr. Pamoukian's affirmation, the Court finds that the Moving Defendants have established prima facie entitlement to judgment as a matter of law that the surgery and preoperative and postoperative care of the decedent were performed within the standard of care. 
In opposition, Plaintiff proffers the expert medical affidavit of "Expert A,"[FN2]
a board-certified physician in General Surgery and Vascular Surgery. 
Unlike Dr. Pamoukian, however, Expert A does not proffer an opinion regarding whether the preoperative and postoperative treatment of the decedent adhered to the standard of care. Instead, Expert A's opinion attempts to contravene Dr. Pamoukian's opinion which finds that the Harrington Defendants did not depart from standard of in performing the surgery of March 21, 2016. Expert A, like Dr. Pamoukian, acknowledges that iatrogenic splenic injury is a known, albeit uncommon, complication of post-EVAR abdominal aneurysm repair surgery. However, in the present case, Expert A asserts that splenic injury, represented a deviation from the accepted standard of care and was the proximate cause of the decedent's injuries and subsequent death. Notwithstanding Expert A's conclusion, the Court finds that Expert A's opinion appears to be predicated solely upon the occurrence of the injury and does not specifically articulate why this particular procedure was not considered a known risk or complication in accordance with accepted standard of care in vascular surgery. "Where an injury is one which might naturally occur from causes other than a defendant's negligence the inference of his negligence is not fair and reasonable." (Mortensen v. Memorial Hospital, 105 AD2d 151, 158 [1st Dept. 1984]). It is well settled that where the expert's ultimate assertions are speculative or unsupported by any evidentiary foundation, the opinion should be given no probative force and is insufficient to withstand summary judgment. See (Cabrera v Golden, —AD3d &mdash, 2024 NY Slip Op 04112 [1st Dept 2024]). "An expert's affirmation that sets forth general conclusions, misstatements of evidence, and unsupported assertions, which fails to address the opinions of defendant's expert, is insufficient to defeat summary judgment." Id.
Based on the foregoing, Expert A's opinion is insufficient to raise an issue of fact to rebut Defendants prima facie entitlement to summary judgment on Plaintiff's malpractice claim (see Henry v Duncan, 169 AD3d 421, 421 [1st Dept 2019] ["The injury itself cannot be the only basis to conclude that a departure occurred"]; see generally Diaz v New York Downtown Hosp., 99 NY2d 542, 544 [2002]).
As to Plaintiff's cause of action alleging lack of informed consent, Defendants have established that this cause of action is abandoned and warrants dismissal based on Plaintiff's bills of particulars which states: "Plaintiff is not making a claim for lack of informed consent at this time." Plaintiff has not opposed Defendants prima facie showing regarding this issue. 
Accordingly, it is hereby
ORDERED and ADJUDGED, that the motion by Defendants Martin E. Harrington, [*6]M.D. and Elizabeth Harrington, M.D. seeking summary judgment and dismissal of the complaint insofar as asserted against them is granted, and the complaint is dismissed insofar as asserted against them; and it is further
ORDERED, that the Clerk of the Court is directed to enter judgment accordingly.
DATE 12/9/2024
KATHY J. KING, J.S.C.

Footnotes

Footnote 1:By stipulation, dated August 5, 2022, Plaintiff withdrew all claims against Dr. Lookstein and all claims against Mount Sinai Hospital for vicarious liability arising from negligence. (NYSCEF Doc. No. 186).

Footnote 2:Plaintiff has redacted the name of their expert pursuant to CPLR 3101(d).